

# In the Missouri Court of Appeals
# Eastern District

### DIVISION III

| | | |
|---|---|---|
| THEODORE M. BARDEN, | ) | No. ED101443 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | |
| | ) | Honorable Thomas J. Frawley |
| JILL L. BARDEN, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 10, 2015 |

### Introduction

Appellant Jill Barden ("Wife") appeals from the judgment of the trial court modifying the dissolution decree dissolving her marriage to Respondent Theodore Barden ("Husband"). Wife presents three points on appeal. First, Wife asserts that the trial court erred in terminating Husband's maintenance obligation solely due to Wife's post-dissolution conduct because a party's post-dissolution conduct is not a relevant factor under Section 452.370. Second, Wife contends that the trial court erred in terminating Husband's obligation to contribute toward the oldest child's college expenses because Husband offered to contribute and has the financial ability to do so. Finally, Wife avers that the trial court erred in concluding that certain fees received by Husband were not commissions and, therefore, Wife was not entitled a percentage of the fees pursuant to the dissolution decree.

Because the trial court misapplied the law when it terminated Husband's maintenance obligation and eliminated Husband's obligation to contribute toward his oldest child's college expenses, we reverse those portions of the trial court's judgment and remand those issues to the trial court for reconsideration in accordance with this opinion. The remainder of the trial court's judgment is affirmed.

Factual and Procedural Background

Husband and Wife were married on August 6, 1994. The parties have three children: Emma, Sophie, and Stella. On February 19, 2010, Husband filed a petition to dissolve his marriage to Wife. The parties settled the dissolution matter and on November 29, 2011, the trial court entered its judgment and decree of dissolution ("the dissolution decree"). Husband and Wife were awarded joint legal and physical custody of the three children, with Wife designated as the residential parent for educational and mailing purposes.[1] Husband was ordered to pay Wife $1,383.00 per month in child support and to maintain a health benefit plan for the children. The dissolution decree also ordered Husband to pay 60% of the cost for each child to attend college, not to exceed the costs at the University of Missouri-Columbia. The dissolution decree further ordered Husband to pay Wife $1,875 per month for her maintenance and support, plus 35% of any gross commissions and/or bonuses he received.

On January 17, 2012, Husband filed a motion for family access alleging that Wife was interfering with the exercise of his physical custody rights under the dissolution decree. Husband claimed that he had not seen or spoken to Emma, the parties' oldest daughter, in several months, and that Wife was not actively encouraging Emma to follow the physical custody

---

[1] Husband was awarded physical custody in odd-numbered weeks from 5:00 p.m. Monday until 8:00 a.m. Tuesday and from 5:00 p.m. Thursday until 8:00 a.m. Monday, and in even-numbered weeks from 5:00 p.m. Thursday until 8:00 a.m. Friday.

2

schedule set forth in the dissolution decree.[2]  The trial court granted Husband's motion in part, modifying the physical custody schedule with respect to Emma.  Under the amended schedule, Emma was only required to meet Husband for lunch every other Saturday from 12:00 p.m. to 2:00 p.m.

On August 7, 2012, Husband filed a second motion for family access again alleging that Wife was interfering with the exercise of his physical custody rights under the dissolution decree.  The second motion concerned Sophie and Stella and their failure to follow the court-ordered custody schedule.  The trial court granted Husband's motion in part, awarding him additional custody time during Sophie and Stella's spring break and abating Husband's child support obligation until Sophie and Stella resumed visitation with Husband.[3]

On February 28, 2013, Husband filed a motion to modify the dissolution decree, requesting, *inter alia*, a decrease in his child support obligation and termination of his maintenance obligation.  In support of his motion, Husband alleged that his income had significantly decreased since the dissolution decree was entered.  Wife responded with a counter-motion to modify, for sums due and owing, for interest, and for attorneys' fees.  In the sole count relevant to this appeal, Wife requested $3,203.55 in unpaid maintenance owed from commissions and/or bonuses paid to Husband by Acrux Star Quality Staffing ("Acrux").

The trial court took evidence on the parties' motions on November 6, 2013.  Husband testified that at the time of the dissolution decree he was employed by Alcon as a sales manager and was earning approximately $200,000 per year, including commissions and bonuses.[4]  On

---

[2] An evidentiary hearing was held on Husband's motion, but the transcript of the hearing is not in the record before us.  Nevertheless, we can ascertain from the trial court's judgment that Husband's relationship with Emma is strained, and Emma herself chose not spend time with Husband.

[3] The trial court reinstated Husband's child support obligation on January 1, 2013.

[4] Husband had gross wages of $263,947.13 in 2011 and $182,477.01 in 2012.  His base salary at Alcon was $130,000 per year, and any additional income represented commissions and bonuses.

July 11, 2012, Husband was terminated from Alcon. Husband testified that for the next several months he was self-employed as a recruiter for Acrux where he found job placements for candidates. Husband stated that he successfully placed two candidates, earning a fee of $2,750 for the first placement, and $3,000 for the second placement. Husband did not find a full-time job until February 2013, when he was hired by Surgical Direct, Inc. Husband's annual salary at Surgical Direct, Inc. is $50,000.

Husband also presented the testimony of Dr. Phillip Lorenz ("Dr. Lorenz"), a vocational evaluator who assessed Wife's employability and income potential. Dr. Lorenz testified that Wife works part-time as a merchandiser for Franklin Retails Solutions and as a playground monitor at St. Clement School. From these two jobs Wife earns approximately $1000 per month. Dr. Lorenz concluded that although Wife is not interested in seeking full-time employment, Wife is employable on a full-time basis for the following jobs: customer service representative, merchandiser, retail sales associate, and teacher assistant. Dr. Lorenz opined that Wife could earn between $19,957 and $32,361 per year working full time in one of those positions.

The trial court also heard testimony from Wife and the parties' three daughters. Wife testified about her income and expenses, as well as her daughters' relationships with Husband. The three daughters also testified about their relationships with Husband, as well as their past failures to follow the court-ordered custody schedule. Each daughter indicated that she did not want increased custody time with Father.

On January 9, 2014, the trial court entered its judgment modifying the dissolution decree. The trial court terminated Husband's maintenance obligation to Wife, lowered Husband's child support obligation, modified the custody schedule, and terminated Husband's obligation to contribute toward Emma's college expenses. The trial court also ruled that the income Husband

4

received from Acrux was not commission and therefore Wife was not entitled to a percentage of the income. Wife now appeals.

Wife presents three points on appeal. First, Wife asserts that the trial court erred in terminating Husband's maintenance obligation based solely on Wife's post-dissolution conduct because a party's post-dissolution conduct is not a relevant factor for the trial court to consider under Section 452.370. Second, Wife avers that the trial court erred in terminating Husband's obligation to contribute toward Emma's college expenses because Husband offered to contribute and has the financial ability to do so. Finally, Wife contends that the trial court erred in concluding that the fees Husband received from Acrux were not commissions and therefore Wife was not entitled to a percentage of that income pursuant to the dissolution decree.

Our review of a trial court's ruling modifying a dissolution judgment is governed by Murphy v. Carron, 536 S.W.2d 30, 32 (Mo. banc 1976); Sprouse v. Sprouse, 969 S.W.2d 836, 837 (Mo. App. W.D. 1998). We will affirm the trial court's judgment unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. Id. at 837-38.

**I.      The trial court misapplied the law when it terminated Husband's obligation to pay Wife maintenance.**

Wife's first point on appeal challenges the trial court's judgment terminating Husband's maintenance obligation to Wife and focuses on the trial court's reasoning in rendering its judgment. Wife contends that the trial court based its decision solely on Wife's post-dissolution conduct of alienating the children from Husband and disparaging Husband. Wife maintains that

5

a party's post-dissolution conduct is not a factor the trial court may consider in modifying a maintenance award under Section 452.370 and, therefore, the trial court misapplied the law in terminating Husband's maintenance obligation. We agree.

Section 452.370 governs modification of maintenance. Pursuant to Section 452.370, "the provisions of any judgment respecting maintenance or support may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.1. A change in circumstances rises to the requisite statutory level when it renders the obligor spouse unable to pay maintenance at the assigned rate or when the recipient of the support could meet his or her reasonable needs with a lesser amount of maintenance. Rustemeyer v. Rustemeyer, 148 S.W.3d 867, 870 (Mo. App. E.D. 2004). The statutory standard for modification is designed to be strict so as to discourage frequent and insubstantial motions for modification. Laffey v. Laffey, 72 S.W.3d 143, 147 (Mo. App. W.D. 2002). Therefore, a change in circumstances sufficient to support modification must be proven by detailed evidence by the party seeking the modification. Id. Additionally, the change in circumstances must be unknown and unforeseeable at the time of the entry of the judgment that the spouse seeks to modify. Rustemeyer, 148 S.W.3d at 871.

Our review of the record reveals that the trial court ignored the strict statutory standard set forth in Section 452.370 when considering Husband's motion for modification or reduction of maintenance. Rather than assessing Husband's ability to pay maintenance at the assigned rate or Wife's ability to meet her reasonable needs with a lesser amount of maintenance, the trial court fixated on Wife's conduct toward Husband since the dissolution. The trial court's order and judgment specifically states:

> (ee) The conduct of Wife since dissolution of the marriage is a relevant factor in a proceeding to modify the maintenance awarded to Wife under the judgment of

6

dissolution of marriage, like the conduct of the parties during the marriage is a relevant factor in a proceeding for dissolution of marriage, in determining the amount of maintenance to be paid to Wife by Husband.

(ff) The conduct of Wife since dissolution of the marriage in alienating Husband from the minor children and in disparaging Husband[] *is conduct that renders the amount payable by Husband to Wife under the judgment of dissolution of marriage for her maintenance and support unreasonable* and warrants termination of Husband's obligation to pay any amounts to Wife for her maintenance and support.

(emphasis added). While this Court does not in any way condone negative or harmful post-dissolution conduct by a prior spouse, we find no basis in the law to modify or terminate a maintenance award due to the recipient spouse's post-dissolution conduct. Notably, neither the trial court nor Respondent cites any Missouri judicial authority to support this part of the trial court's judgment. While it is true that a trial court may consider a spouse's misconduct *during* the marriage when making an initial award of maintenance, the relevant question in that determination is how the spousal misconduct affected the marital relationship. To that end, Missouri courts have consistently held that "[m]arital misconduct is a factor only when the offending spouse's misconduct placed extra burdens on the other spouse." Balven v. Balven, 734 S.W.2d 909, 913 (Mo. App. E.D. 1987); see also Divine v. Divine, 752 S.W.2d 76, 78-79 (Mo. App. S.D. 1988) (trial court committed no error in failing to consider marital misconduct in property division where infidelity occurred after both parties had filed for dissolution and thus misconduct had no influence on the breakdown of the marital relationship). We do not extend the application of this rule to a motion for modification because the marital relationship no longer exists. Accordingly, we hold that the trial court misapplied the law when terminating Husband's maintenance obligation due to Wife's post-dissolution conduct.

We note that the record before us contains evidence that Husband's income has substantially decreased since the original decree. Husband's decrease in income constitutes a

7

substantial and continuing change in circumstances potentially warranting a modification of Husband's maintenance obligation. Consideration of that factor is reserved to the trial court and is not properly within the scope of this appeal given the limited basis offered by the trial court for its judgment. Because the trial court is in the best position to determine the appropriate amount of maintenance, if any, to be awarded to Wife, we reverse the trial court's judgment terminating Husband's maintenance obligation and remand for reconsideration of Husband's motion to modify maintenance pursuant to the strict statutory standard set forth in Section 452.370.

## II. The trial court erred when it terminated Husband's obligation to contribute toward college expenses.

Wife next argues that the trial court erroneously based its decision to terminate Husband's obligation to contribute toward Emma's college expenses on its findings that Emma and Husband do not have a close relationship and that Emma did not tell Husband where she wishes to attend college. As with her first point on appeal, Wife argues that the trial court's basis for terminating Husband's obligation to financially contribute toward Emma's college expenses is not supported by Missouri law. We agree.

Section 452.370, discussed above, also applies to modification of child support judgments. Under Section 452.370, the party seeking modification must show changed circumstances so substantial and continuing as to make the terms of the original judgment unreasonable. Massey v. Todd, 962 S.W.2d 949, 950 (Mo. App. S.D. 1998). First and foremost, the primary concern of the court is the welfare of the child, not the welfare of the husband or wife. Brown v. Brown, 19 S.W.3d 717, 724 (Mo. App. W.D. 2000). "The party seeking modification has a heavy burden of proving he is unable to support his children in the manner contemplated at the time the separation agreement was incorporated into the dissolution decree." Id.

8

It is well established in Missouri that a parent is not automatically liable for the cost of a child's post-secondary education. Forde v. Forde, 190 S.W.3d 521, 528 (Mo. App. E.D. 2006). Five factors are considered when determining what, if any, college education expenses to include in a child support award: (1) the financial ability of the non-custodial parent; (2) the ability and capacity of the child for college work; (3) the nearness of the child to the age of majority; (4) whether the child is self-supporting; and (5) the non-custodial parent's willingness to provide for such education, as shown by some agreement or other indication on his or her part. Id.

The record is clear that the trial court did not consider these five factors as mandated by Missouri case law when entering its judgment. Instead, the trial court terminated Husband's obligation to contribute towards Emma's college education because of the poor relationship that existed between Husband and Emma, and Emma's unwillingness to work to repair that relationship. In explaining its decision to Emma at trial, the trial court admonished:

> You do whatever you want. You want to make an adult decision, there will be an adult consequence. I'm not going to put up with it. You don't want to obey court orders. You want to go and act a fool when you're going with your father; sit there and say it's been 20 minutes and then leave and not say anything. That's about acting like a four-year-old. Maybe I should treat you like a four-year-old instead of an adult. But no, I'll treat you like an adult. You made an adult decision, there's an adult consequence. You figure out how to pay for college on your own, with your mother, whoever else; you figure it out. If you can't find any money, that's on you. Good luck.

Contrary to the trial court's reasoning, the nature of the relationship between the noncustodial parent and the child is not a factor in determining the appropriate amount of support. Gerlach v. Adair, 211 S.W.3d 663, 669 (Mo. App. W.D. 2007). "[A] poor relationship does not eliminate the parent's duty to support her child, nor should a child be penalized for the existence of such poor relationship." Id. Likewise, a custodial parent cannot be held responsible for his or her

9

child's own decision to avoid the noncustodial parent, and thus should not be penalized with a decrease in child support. Id.

While the trial court may have deemed it appropriate to rebuke a child it believed to be errant and disrespectful to her parent, the trial court simply lacks the authority to so act under Missouri law, and misapplied the law when it terminated Husband's obligation to assist in paying Emma's college expenses. We reverse the trial court's judgment with respect to Husband's obligation to pay for Emma's college costs and remand for reconsideration of this issue consistent with the standard set forth in Forde.[5]

### III. The trial court did not err in failing to classify Husband's income from Acrux as commission.

In her final point on appeal, Wife contends that the trial court erred in concluding that the fees Husband received from Acrux were not commissions. Wife avers that while consulting with Acrux, Husband placed two employees with Crown Packaging Corporation. Acrux was paid $6,750 and $7,500, respectively, for each placement, and out of those fees Husband was given $2,750 and $3000. At trial, Husband twice referred to these payments as a percentage of the total fees received by Acrux. Wife argues that because the income Husband received from Acrux was a percentage of the total paid to Acrux from Crown Packaging Corporation, the trial court should have classified the income as commission and therefore awarded Wife 35% of those fees pursuant to the dissolution decree. We are not persuaded.

We find no error of law in the trial court's ruling. At the time the dissolution decree was entered, Husband was employed as a sales manager and regularly earned commissions which

---

[5] We further note that although the trial court is in the best position to determine the appropriate amount of college education expenses to include in a child support award, a judgment completely terminating Father's obligation would seem to be against the weight of the evidence. At trial, Husband proposed to amend the judgment to require Husband and Wife each pay 50% of the cost, indicating both his ability and willingness to assist in providing for Emma's college education, factors the trial court must consider under Forde.

10

nearly doubled his base salary. Wife was awarded 35% of those commissions as a part of Husband's maintenance obligation. The record reflects that after Husband was fired from his sales manager position, he briefly consulted with Acrux where he placed two job candidates and earned fees totaling $5,750. The trial court could have properly concluded that these fees were not commissions or bonuses as those terms were used in the dissolution decree. Wife has failed to show that the trial court's ruling is not supported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. Point denied.

## Conclusion

We reverse the trial court's judgment eliminating Husband's maintenance obligation and terminating Husband's duty to contribute toward Emma's college expenses. Those portions of the judgment are remanded for reconsideration in accordance with this opinion. We affirm the judgment in all other respects.

_____
Kurt S. Odenwald, Presiding Judge

Robert G. Dowd, Jr., J., Concurs
Gary M. Gaertner, Jr., J., Concurs

11