

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| MICHAEL PAUL HUGHES, | ) | No. ED103535 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 2105FC-09706-03 |
| | ) | |
| JILLISA COLLEEN HUGHES, | ) | Honorable Sandra Farragut-Hemphill |
| | ) | |
| Respondent. | ) | Filed: December 13, 2016 |

Michael Paul Hughes ("Husband") appeals the trial court's judgment dismissing and denying his motion to modify a maintenance obligation to Jillisa Colleen Hughes ("Wife"). We affirm in part and reverse in part.

## I. BACKGROUND

Husband and Wife were married on June 20, 1998. After approximately seven years of marriage, Husband petitioned the court to dissolve the marriage and, on June 30, 2006, the parties were divorced, pursuant to a dissolution judgment entered by the Circuit Court of St. Louis County. There were no children born of the marriage.

To facilitate and effectuate their divorce, Husband and Wife entered into a Marital Settlement and Separation Agreement ("MSA") which, among other things, set forth the terms of maintenance to be awarded to Wife. The MSA and its terms were approved and incorporated into the trial court's "Dissolution Decree." Together, the Dissolution Decree and the MSA embody the "Dissolution Judgment."

Pursuant to the MSA, Husband was ordered, *inter alia*, to pay Wife $2,500.00 per month in maintenance. In addition, Husband was also ordered to pay Wife $2,000.00 every quarter in maintenance. In relevant part, the MSA stated the following:

7. <u>MAINTENANCE OR ALIMONY</u>

a.  Husband shall pay to Wife maintenance in the following amounts:
    (1) Two Thousand Five Hundred Dollars ($2,500.00) each month commencing July 8, 2006[;]
    (2) Two Thousand Dollars ($2,000.00) every quarter beginning on October 1, 2006[;]
    (3) An amount equal to the monthly payment due under U.S. Bank Loan [ ] ("Car Loan"), which is secured by the automobile awarded to Wife hereunder, and which may be paid directly to U.S. Bank, until the loan is paid in full;
    (4) An amount equal to Wife's COBRA premiums under her current health insurance program until the resolution of Wife's disability claim referred to in paragraph 7b. If Wife's COBRA coverage terminates prior to Wife receiving disability, Husband shall purchase a comparable health insurance plan for Wife at his costs as additional maintenance for Wife. Said obligation shall terminate upon Wife's receipt of health insurance under her disability claim. If Wife is denied disability after the exhaustion of all appeals, Wife is entitled to, this shall be deemed a change in circumstances and either party may file a motion to modify to seek a change of this order. However, Husband shall continue to pay health insurance premiums until modified by the Court.
b.  Wife agrees to hire the law firm of Stone, Leyton & Gershman, P.C. ("SLG") to pursue her social security disability claim under the terms of SLG's standard contingent fee arrangement. Husband's *maintenance obligations hereunder shall be reduced,* dollar for dollar, by any monthly disability benefits awarded to Wife. In addition, Wife agrees that any award of back pay shall first be applied to retire the Car Loan, next to the payment of health insurance premiums until depleted.
c.  To secure his obligations hereunder, Husband will make wife the beneficiary of his SEP IRA in the amount of $150,000 until her death or remarriage.
d.  Husband's maintenance obligations will terminate upon Wife's death or remarriage.

...

14. The terms of this Agreement *shall not be subjected to modification* or change regardless of the relative circumstances of the parties, *except as specifically provided for in the Agreement.*

(emphasis added).

2

As previously stated, the trial court incorporated the MSA into its Dissolution Decree. Regarding maintenance, the Dissolution Decree ordered:

**Maintenance:**
[Husband] is ordered to pay [Wife] per month the sum of: $2,500.00 commencing July 8, 2006; $2,000.00 every quarter beginning October 1, 2006; plus additional sums pursuant to the [MSA] marked Exhibit A (Not subject to modification) (Subject to modification).

(strike-out in original).

Thereafter, in 2009, Husband filed a motion to modify the maintenance terms set forth in the Dissolution Judgment. Husband and Wife eventually entered into a consent modification judgment ("Prior Consent Modification"), which was approved and incorporated by the trial court. Under its terms, Husband's maintenance obligation was reduced and he was ordered, *inter alia*, to pay Wife $1,953.34 per month. For all other purposes of this appeal, the Prior Consent Modification furnished no other adjustments, amendments, or modifications to the Dissolution Judgment. The Prior Consent Modification provided no analysis on the question of modifiability of the maintenance obligation.

In 2010, Wife began a romantic relationship with David Lewis ("Lewis"). In 2012, Wife moved into Lewis' house in Chesterfield, where she has since continuously resided. There is no dispute Wife and Lewis are currently, and desire to remain, in a committed, romantic relationship, yet there exists no evidence Wife and Lewis intend to marry.

Relying in significant part upon Wife's cohabitation with Lewis, Husband filed a second motion to modify ("Motion to Modify") in May 2014. In response thereto, Wife filed a motion for contempt ("Motion for Contempt"), requesting the trial court to set aside the Prior Consent Modification and order Husband to satisfy purported past due maintenance obligations. In addition, Wife filed an answer and motion to dismiss Husband's Motion to Modify ("Motion to Dismiss"), arguing, in part, that the MSA prohibited any modification of the maintenance

3

awarded in the Dissolution Judgment. Neither party requested any specific findings of fact and conclusions of law.

Following a bench trial on Husband and Wife's respective motions, the trial court entered a judgment granting Wife's Motion to Dismiss, denying Husband's Motion to Modify, and denying Wife's Motion for Contempt. The trial court focused its conclusion upon paragraph 14 of the MSA, finding:

> The [MSA] clearly states that the "terms of this Agreement shall not be subjected to modification or change, regardless of the relative circumstances of the parties, except as specifically provided for in the Agreement." [Husband] has not offered any evidence or argued that his Motion [to Modify] is based upon any condition "specifically provided for" in the [MSA], and accordingly his motion fails.

The trial court's judgment does not contain any reference as to the consequence of the Prior Consent Modification. Husband now appeals.

## II. DISCUSSION

Husband raises three points on appeal. In his first point, Husband argues the trial court erred in dismissing his Motion to Modify upon finding that the maintenance award was not modifiable.[1] In Husband's second and third points on appeal, he argues the trial court erred in finding Wife's relationship and cohabitation with Lewis neither terminated Husband's maintenance obligation nor constituted a substantial and continuing change in circumstances sufficient to warrant modification. Husband asserts the trial court's finding was against the weight of the evidence as well as not supported by substantial evidence.

---

[1] Husband further argues that even if this Court were to conclude the Dissolution Judgment prohibits modification of the maintenance award, the Prior Consent Modification bars Wife's non-modifiability argument under the legal doctrines of, (1) *res judicata*; (2) law of the case; (3) judicial estoppel; and (4) equitable estoppel. Because we dispose of this point on other grounds, we do not reach the merits of Husband's additional arguments.

4

## A. Standard of Review

This Court reviews a ruling on a motion to modify to determine whether it is supported by substantial evidence, whether it is against the weight of the evidence, or whether it erroneously declares or applies the law. *Kunce v. Kunce*, 459 S.W.3d 443, 446 (Mo. App. W.D. 2015); *see also Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). We view all evidence and reasonable inferences therefrom in the light most favorable to the prevailing party, and all factual issues upon which the trial court elected not to make specific findings of fact are considered to have been found in accordance with the trial court's judgment. *Swartz v. Johnson*, 192 S.W.3d 752, 754 (Mo. App. W.D. 2006); *see* Rule 73.01(c).[2] Further, we will defer to the trial court even if the evidence could support a different conclusion. *Butts v. Butts*, 906 S.W.2d 859, 861 (Mo. App. S.D. 1995).

## B. Modifiability of Maintenance Award

In his first point on appeal, Husband contends the trial court erred in dismissing his Motion to Modify upon finding that the maintenance award was not modifiable.

### 1. The Type of Maintenance Awarded by the Trial Court

As a threshold matter, the parties agree that the trial court awarded "separation agreement decretal maintenance,"[3] authorized by section 452.325 RSMo 2000,[4] which reads:

> 1. ... the parties may enter into a written separation agreement containing provisions for the maintenance of either of them ...
>
> ... .
>
> 4. If the court finds that the separation agreement is not unconscionable as to ... maintenance...

---

[2] All references to Rules are to Missouri Supreme Court Rules (2016).

[3] Since the parties do not dispute the trial court awarded "separation agreement decretal maintenance," we will refer to the trial court's award simply as maintenance for ease of reading, unless otherwise specifically noted.

[4] Unless otherwise indicated, all further statutory references to section 452.325 are to RSMo 2000, which incorporates legislative amendments through 1973 and is the latest version of the statute.

5

(1) ... its terms shall be set forth in the decree of dissolution ... and the parties shall be ordered to perform them...

...

6. ... the decree may expressly preclude or limit modification of terms set forth in the decree if the separation agreement so provides.

2.      Whether the Dissolution Decree Expressly Precluded or Limited Modification of the Maintenance Award

The parties' disagreement essentially lies in determining whether the Dissolution Decree or the MSA controls regarding modifiability of the maintenance award. To begin our analysis on this point, we first look to the terms of the trial court's Dissolution Decree which reads:

> **Maintenance:**
> [Husband] is ordered to pay [Wife] per month the sum of: $2,500.00 commencing July 8, 2006; $2,000.00 every quarter beginning October 1, 2006; plus additional sums pursuant to the [MSA] marked Exhibit A ~~(Not subject to modification)~~ (Subject to modification).

(strike-out in original).

Also relevant to our analysis is the language of the MSA, which provides in relevant part:

7. MAINTENANCE OR ALIMONY

a.  Husband shall pay to Wife maintenance in the following amounts:
    (1) Two Thousand Five Hundred Dollars ($2,500.00) each month commencing July 8, 2006[;]
    (2) Two Thousand Dollars ($2,000.00) every quarter beginning on October 1, 2006[;]
    (3) An amount equal to the monthly payment due under U.S. Bank Loan [ ] ("Car Loan"), which is secured by the automobile awarded to Wife hereunder, and which may be paid directly to U.S. Bank, until the loan is paid in full;
    (4) An amount equal to Wife's COBRA premiums under her current health insurance program until the resolution of Wife's disability claim referred to in paragraph 7b. If Wife's COBRA coverage terminates prior to Wife receiving disability, Husband shall purchase a comparable health insurance plan for Wife at his costs as additional maintenance for Wife. Said obligation shall terminate upon Wife's receipt of health insurance under her disability claim. If Wife is denied disability after the exhaustion of all appeals, Wife is entitled to, this shall be deemed a change in circumstances and either party may file a motion to modify to seek a change of this order. However, Husband shall continue to pay health insurance premiums until modified by the Court.

6

b. Wife agrees to hire the law firm of Stone, Leyton & Gershman, P.C. ("SLG") to pursue her social security disability claim under the terms of SLG's standard contingent fee arrangement. Husband's *maintenance obligations hereunder shall be reduced*, dollar for dollar, by any monthly disability benefits awarded to Wife. In addition, Wife agrees that any award of back pay shall first be applied to retire the Car Loan, next to the payment of health insurance premiums until depleted.

c. To secure his obligations hereunder, Husband will make wife the beneficiary of his SEP IRA in the amount of $150,000 until her death or remarriage.

d. Husband's maintenance obligations will terminate upon Wife's death or remarriage.

...

14. The terms of this Agreement *shall not be subjected to modification* or change regardless of the relative circumstances of the parties, *except as specifically provided for in the Agreement.*

(emphasis added).

The above-stricken out and emphasized terms highlight the conflict between the Dissolution Decree and the MSA as to modification. Based upon this conflict, Husband argues the Dissolution Decree explicitly sanctions the modification of the maintenance award because it strikes through the phrase, "(Not subject to modification)," while leaving unblemished the phrase, "(Subject to modification)." In response, Wife asserts that despite the Dissolution Decree's "standard clause about modifiability[,]" this Court must harmonize the general reference to modifiability in the Dissolution Decree with the MSA's specific language from paragraph 7, which sets out the specific terms in which the various maintenance awards can be modified, and paragraph 14, which generally prohibits modification of the terms of the MSA.

Wife further argues that this case is controlled by *Thomas v. Thomas*, claiming it is "almost directly on point" because the language the *Thomas* Court found sufficient to preclude modification is similar to language of paragraph 14 of the MSA in this case. 171 S.W.3d 130 (Mo. App. W.D. 2005). Husband counters that the Dissolution Decree controls modifiability of

7

the maintenance award because section 452.335.3 RSMo 2000[5] mandates that modifiability be addressed in the dissolution decree. Additionally, Husband argues that *Thomas* is distinguishable from this case because the *Thomas* dissolution judgment was subject to an earlier and different version of section 452.335.3, which was amended in 1988. 171 S.W.3d at 134. For the reasons stated below, we agree with Husband's reading of section 452.335.3 and that the Dissolution Decree controls modifiability of his maintenance obligation.

Section 452.335 authorizes a trial court to award decretal maintenance under certain circumstances without the parties entering into a separation agreement. Section 452.335.3 mandates that a trial court awarding maintenance "*shall* state if it is modifiable or nonmodifiable" in the decree. Section 452.335.3 (emphasis added); *see also Lueckenotte v. Lueckenotte*, 34 S.W.3d 387, 392 (Mo banc. 2001). Although section 452.335 applies to decretal maintenance and this case involves separation agreement decretal maintenance, two Missouri Court decisions discussing modifying maintenance under pre-1988 separation agreements have addressed the interplay among maintenance awards and state statute.

In *Thomas v. Thomas*, the Western District of this Court addressed questions of maintenance modification involving a separation agreement which included the following clause: "this [a]greement may not be altered, changed or modified except in a writing signed by each of the parties." 171 S.W.3d at 132, 134-35. In reversing the trial court, the Western District concluded that the parties' separation agreement language sufficiently prohibited the modification of maintenance. *Id.* at 132. The dissolution decree, which incorporated the separation agreement, was silent as to the modifiability of the maintenance award. *Id.* The *Thomas* Court also addressed the possible ramifications of the 1988 amendments to section

---

[5] Unless otherwise indicated, all further statutory references to section 452.335 are to RSMo 2000, which incorporates legislative amendments through 1988 and is the latest version of the statute.

452.335.3, requiring the trial court to designate all maintenance awards as either modifiable or nonmodifiable. *Id.* at 133-34, 133 n. 6. The Court specifically held that the 1988 amendments could not be applied retroactively to pre-1988 dissolution judgments, which was the circumstance in *Thomas*. *Id.* at 133 n.6. As a consequence, the *Thomas* Court found the maintenance obligation was nonmodifiable because the agreement so stated and despite the dissolution decree being silent on the subject. *Id.* at 132-33.

In *Thomas*, the Western District relied on and made reference to *Lueckenotte v. Lueckenotte*, a case the Missouri Supreme Court decided in 2001. *Thomas*, 171 S.W.3d at 132-34, 133 n.6 (citing *Lueckenotte*, 34 S.W.3d at 391-92). In *Lueckenotte*, the Supreme Court upheld a maintenance obligation as being nonmodifiable when the parties' separation agreement so stated and in spite of silence in the decree. 34 S.W.3d at 391-92. The Supreme Court discussed the pre-1988 separation agreement and held, "[u]nder the law at the time of the [a]greement and [decree] incorporating the [a]greement, the maintenance provision was nonmodifiable, notwithstanding the absence of a separate maintenance order to that effect. Incorporating the provisions of the *Lueckenotte* agreement into the decree was sufficient to expressly preclude [ ] modification of terms set forth in the decree." *Id.* at 390, 392 (internal quotations omitted).

In essence, the *Thomas* and *Lueckenotte* Courts each implied that the mandate of section 452.335.3, that a dissolution decree "shall state [whether maintenance] is modifiable," in a statute authorizing a court to award decretal maintenance, should be applied to all maintenance awards, including to awards of separation agreement decretal maintenance pursuant to section 452.325. *See* 171 S.W.3d at 132-33; 34 S.W.3d at 391-92. The implication arises from the fact that, only after deciding that the dissolution judgments were not governed by the 1988 amendment, did each Court find the separation agreement controlling because the agreement

9

explicitly precluded modification and the dissolution decree was silent on future modifiability. *See id.*

Consequently, section 452.335.3's mandate is not limited to decretal maintenance as Wife implies, but rather, section 452.335.3 applies to separation agreement decretal maintenance also. *See id.* Accordingly, we find that if a separation agreement purports to limit or preclude modification of a maintenance award, section 452.335.3 mandates the trial court's dissolution decree do more than simply incorporate the agreement by reference and remain silent on the question of future modifiability. The question of whether a maintenance award is modifiable or not must be expressly addressed in the dissolution decree itself or there must be a specific reference to the terms of the separation agreement as to modifiability.

In contrast to *Thomas* and *Lueckenotte*, the MSA and Dissolution Decree in this case were executed in 2006 – well after 1988 – and accordingly, are subject to the amended and current version of section 452.335.3, which mandates that the decree itself must state if maintenance is modifiable. Additionally, unlike the judgments in *Thomas* and *Lueckenotte* where the dissolution decrees were silent on modifiability, here, the Dissolution Decree entered by the trial court did in fact state that the maintenance award was "(Subject to modification)." Moreover, language restricting modification was stricken through.

Therefore, because the Dissolution Decree included the language of "(Subject to modification)," struck through "(Not subject to modification)," and did not otherwise preclude or limit modification of the maintenance award, we find the trial court erred in granting Wife's Motion to Dismiss Husband's Motion to Modify, because the Dissolution Judgment provided for modification of the maintenance award. Point one is granted.

10

C.    **Termination and Modification Based on Wife's Relationship and Cohabitation with Lewis**

We now address Husband's second and third points on appeal, which are both directed at the trial court's denial of Husband's Motion to Modify.[6] Respectively, Husband argues the trial court erred in finding Wife's relationship and cohabitation with Lewis neither terminated Husband's maintenance obligation nor constituted a substantial and continuing change in circumstances sufficient to warrant modification. Husband asserts the trial court's finding was against the weight of the evidence as well as not supported by substantial evidence.

1.    **General Law Relating to Maintenance Modification and Standard of Review**

In light of our finding in Section II.B. that the maintenance award is modifiable, modification is governed by section 452.370 RSMo 2000.[7] *Barden v. Barden*, 463 S.W.3d 799, 804 (Mo. App. E.D. 2015). In relevant part, section 452.370 provides that an award of maintenance "may be modified only upon a showing of changed circumstances so substantial and continuing as to make the terms unreasonable." Section 452.370.1. This statutory standard is designed to be strict in order to discourage recurrent and insubstantial motions to modify maintenance. *Barden*, 463 S.W.3d at 804. Accordingly, changed circumstances sufficient to support a modification of a maintenance award must be proven by detailed evidence. *Id.* The party requesting a modification of maintenance bears the burden of establishing the terms of the prior decree have subsequently become unreasonable. *Rustemeyer v. Rustemeyer*, 148 S.W.3d 867, 870 (Mo. App. E.D. 2004).

---

[6] Although the trial court's judgment granted Wife's Motion to Dismiss Husband's Motion to Modify, the trial court continued on the merits and denied Husband's Motion to Modify. Therefore, we will also consider the merits of Husband's Motion to Modify.

[7] All further statutory references to section 452.370 are to RSMo 2000, which incorporates legislative amendments through 1998. The statute was subsequently amended in 2014, but those amendments are not relevant to this appeal because they did not go into effect until August 28, 2014, which was after Husband filed his Motion to Modify in this case.

11

The trial court is afforded considerable discretion in modifying maintenance, and an appellant must prove the court abused this discretion. *Stine v. Stine*, 401 S.W.3d 567, 569 (Mo. App. E.D. 2013). "The trial court abuses its discretion when its order is against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration; if reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *Lee v. Gornbein*, 124 S.W.3d 52, 56 (Mo. App. W.D. 2004) (internal quotations omitted).

At this point, we note that Husband argues the trial court's denial of his Motion to Modify was against the weight of the evidence *and* not supported by substantial evidence. In determining whether a trial court's judgment is supported by substantial evidence, an appellate court views the evidence in the light most favorable to the judgment, disregards all contrary evidence, and defers to the trial court's credibility determinations. *Ivie v. Smith*, 439 S.W.3d 189, 200 (Mo. banc 2014). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial] court's judgment." *Id.* at 199.

Further, in determining whether a trial court's judgment is against the weight of the evidence, we defer to the trial court's findings of fact on contested factual issues, and we defer to the trial court's credibility determinations. *Id.* at 206. A judgment is against the weight of the evidence only if the trial court could not have reasonably found, from the evidence at trial, the existence of a fact that is necessary to sustain the judgment. *Id.* Finally, our Court will overturn a trial court's judgment under these two fact-based standards of review only if we have a firm belief that the judgment is wrong. *Hopkins v. Hopkins*, 449 S.W.3d 793, 802 (Mo. App. W.D. 2014).

12

## 2.    Termination of Maintenance

In Husband's second point, he argues the trial court erred in finding that Wife's relationship and cohabitation did not constitute a substitute for marriage so as to require termination of maintenance. He asserts the trial court's finding was against the weight of the evidence.

Generally, in Missouri, unless otherwise provided by a prior decree, "the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance." Section 452.370.3. The Dissolution Judgment in this case is consistent with that general statutory principle, as MSA Paragraph 7 also provides "Husband's maintenance obligations will terminate upon Wife's death or remarriage." It is undisputed Wife is not remarried, so the terms authorizing outright termination of maintenance because of remarriage are not triggered.

Alternatively, Husband argues Wife's relationship and cohabitation with Lewis is comparable to or a substitute for remarriage so as to justify terminating maintenance under the Dissolution Judgment. In support thereof, Husband directs this Court's attention to several cases in which Missouri Courts have reasoned a permanent cohabitating relationship may be a substitute for remarriage and justify a modification or termination of maintenance. *See Herzog v. Herzog*, 761 S.W.2d 267, 268-69 (Mo. App. E.D. 1988); *see also C.K. v. B.K.*, 325 S.W.3d 431, 434-35 (Mo. App. E.D. 2010); *Hopkins*, 449 S.W.3d at 797-800. Courts have held there is a "basic unfairness in requiring a prior spouse to continue supporting a spouse who has entered into a relationship with some of the benefits of, but few of the detriments of, marriage." *C.K.*, 325 S.W.3d at 434 (citing *Herzog*, 761 S.W.2d at 268); *see also* section 452.370.1. Generally, whether a permanent cohabitating relationship is a substitute for remarriage is a question of law. *See Stark v. Thierjung*, 714 S.W.2d 830, 831-32 (Mo. App. E.D. 1986).

13

In *Herzog*, the trial court was faced with a modification proceeding in which a former husband sought to terminate or modify maintenance to his former wife because of wife's admitted cohabitation with another to whom she was not married. *See Herzog*, 761 S.W.2d at 268. In that case, the former wife had been living with another for approximately one year and the two had only commingled funds for "some food." *Id.* at 268-69. This Court contemplated the relevance and impact of wife's new relationship and held that "[w]here the relationship has achieved a permanence sufficient for the trial court to conclude that it has become a substitute for marriage, equitable principles warrant a conclusion that the spouse has abandoned his or her rights to support from the prior marriage and is looking to the new relationship in that regard." *Id.* at 268. In so holding, we stated that it is the obligation of the trial court to evaluate the new relationship of the spouse receiving maintenance to determine whether equity justifies termination or modification of maintenance. *Id.* Following such an analysis, our Court held the former wife's relationship and cohabitation in that case did not rise to the level of permanence sufficient to support the conclusion that it had become a substitute for marriage. *Id.* at 268-69.

In *C.K. v. B.K.*, our Court further evaluated the effect of cohabitation in light of serving as a substitute for marriage. 325 S.W.3d at 434-35. In *C.K.*, the former husband argued the trial court erred in modifying, but not terminating, his former wife's maintenance as wife's relationship was of such permanence to constitute a substitute for marriage. *Id.* In that case, the trial court considered the following facts as supporting a permanent relationship: the former wife and her new boyfriend had been in a relationship for over five years and had cohabitated for approximately two years; the two intended to remain in a committed and permanent relationship; and the former wife had a child with her boyfriend. *Id.* at 432, 435. However, the trial court ultimately modified maintenance instead of terminating it, implicitly finding the relationship was not a substitute for marriage, considering the couple had not held themselves out as married or

14

engaged in a commitment ceremony, they had no present intent to get married, and the two did not commingle finances or hold joint bank accounts or credit cards. *Id.* Our Court again found that the relationship did not rise to the level of permanence sufficient to support the conclusion that it had become a substitute for marriage. *Id.* at 434-35.

In 2014, the Western District in *Hopkins* also addressed the issue of cohabitation with others in its analysis. 449 S.W.3d at 797-800. In *Hopkins*, the former husband sought to terminate maintenance under *Herzog*, where his former wife had been living with another to whom she was not married for six years and the trial court found the cohabitation relationship had "taken on the permanence of marriage." *Id.* at 797-98.[8] The Court upheld the trial court's determination that the relationship and cohabitation did not rise to the level of being a substitute for marriage because wife could not work due to a disability, wife and her cohabitant paid their own portion of the bills, the cohabitant did not otherwise contribute to wife's expenses or provide her with financial support, and the relationship lacked "a commitment or agreement to support each other financially, which is an obligation of marriage." *Id.* at 797-98, 800.[9]

The question before us on this point is whether the facts in this case suggest equitable principles dictate outright termination of maintenance because of cohabitation with another. *See Herzog*, 761 S.W.2d at 268. In accordance with the trial court's judgment, the evidence reveals

---

[8] The *Hopkins* Court did not address wife's cohabitation with two family members and a family friend in its analysis of termination based on a substitute for marriage. 449 S.W.3d at 796, 797-800. However, the Court dealt with the financial implications of such cohabitation under a separate analysis, treating non-romantic cohabitation essentially the same as cohabitation with another to whom the former spouse is in a romantic relationship. *Id.* at 797-800.

[9] *See also, e.g., Butts*, 906 S.W.2d at 863-64 (finding no substitute for marriage even though former wife and male cohabitant had lived together for two or three years, had been sexually intimate, and cohabitant had committed to wife for the rest of his life, the two shared rent and living expenses but did not otherwise financially contribute to each other, slept in separate bedrooms, and had not commingled funds or provided for each other in the event of death); *Weston v. Weston*, 882 S.W.2d 337, 340-41 (Mo. App. S.D. 1994), overruled on other grounds by *Rallo v. Rallo*, 477 S.W.3d 29, 44 n. 8 (Mo. App. E.D. 2015) (finding no substitute for marriage despite former wife and cohabitant having lived together for three years, shared the same bed, been sexually intimate, and cohabitant had contributed to household expenses because the couple did not intend to marry, they had not made a commitment to each other, and the former wife had not provided for her cohabitant in her will).

that Wife and Husband were married for eight years, no children were born of the marriage, and their marriage was dissolved in 2006. The parties agreed that Husband would pay maintenance in a detailed schedule in paragraph 7 of the MSA and the parties both signed the MSA with paragraph 14 suggesting the terms were not modifiable, notwithstanding our finding to the contrary because the Dissolution Decree controlled modifiability. The MSA made reference to Wife's alleged disability and maintenance reduction should she be formally found to be disabled by the Social Security Administration. Parties are typically bound by the terms of their agreement, as they intended to be. *See Peaslee v. Peaslee*, 844 S.W.2d 569, 571 (Mo. App. E.D. 1992).[10]

Regarding Wife's new relationship and circumstances, Wife began dating Lewis in 2010 and moved into Lewis' house in 2012, where she has continuously resided with Lewis. Wife pays rent to Lewis although the amount and frequency are disputed. Wife and Lewis have at least one bank account in common, and Wife's car loan is in Lewis' name but monthly payments are satisfied by Wife. Moreover, Wife and Lewis share other expenditures, such as vacation expenses, utility fees, and grocery and entertainment costs. Wife testified she suffers from a blood disease, schizophrenia, post-traumatic stress syndrome, and bipolar disorder, all of which she has suffered from and been treated for since she was married to Husband, as further evidenced by the terms of the MSA. Wife further testified of her inability to work because of her problems with concentration and extreme anxiety, which the trial court specifically found as credible and/or relevant when it denied Husband's Motion to Modify. Finally, although both

---

[10] *See, e.g., Shaver v. Shaver*, 913 S.W.2d 443, 445 (Mo. App. E.D. 1996) (affirming the trial court's dismissal of husband's motion to modify, holding the parties to their separation agreement which did not provide for the modification of maintenance upon wife's cohabitation with another person); *Barr v. Barr*, 922 S.W.2d 419, 420-22 (Mo. App. W.D. 1996) (affirming the trial court's termination of maintenance because separation agreement provided for termination upon wife's "conjugal cohabitation").

16

Wife and Lewis testified about their desire and hope that their committed relationship continues, there is no evidence Wife and Lewis intend to marry.

Based on these facts, we are unable to conclude that the relationship and cohabitation of Wife and Lewis rises to the level of permanence or has sufficient characteristics of a substitute for marriage to warrant termination of maintenance. While Wife and Lewis indicate a desire to continue their relationship and share a portion of their income or expenses, the evidence is not sufficient to find their relationship is of a nature where each is committed to the other financially, emotionally, or otherwise. This is not to say that at some point in their on-going relationship that it may adopt a character of permanence and commitment, despite lack of legal recognition, and be found by a trial court to be the same as marriage, demanding that equity end Husband's maintenance obligation.

Therefore, we find the trial court's conclusion that Wife's relationship and cohabitation did not constitute a substitute for marriage so as to require termination of maintenance was not against the weight of the evidence. *See Herzog*, 761 S.W.2d at 268-69; *Hopkins*, 449 S.W.3d at 797-800. Thus, the trial court did not err in denying the portion of Husband's Motion to Modify requesting termination of his maintenance obligation.

### 3.    Modification of Maintenance

In the remaining part of Husband's second point on appeal and in his third point, he argues the trial court erred in finding that Wife's relationship and cohabitation with Lewis did not constitute a substantial and continuing change in circumstances warranting modification of maintenance. He asserts the trial court's finding was against the weight of the evidence and not supported by substantial evidence, respectively.

Although we find Wife's relationship and cohabitation with Lewis did not constitute a substitute for marriage to warrant termination based on equitable principles, such cohabitation

17

can be the basis for modification, specifically as it relates to Wife's financial circumstances, including her needs and the nature of sharing expenses with Lewis. As opposed to the equitable analysis employed for finding a "substitute for marriage" requiring termination, whether Wife's relationship and cohabitation with Lewis gives rise to a modification of Husband's maintenance obligation is determined by the statutory analysis under section 452.370.

### a. Applicable Law

Ultimately, the fundamental issue upon a motion to modify maintenance remains whether a substantial and continuing change of circumstances exists so as to make the terms of the prior decree unreasonable. *See Eaton v. Bell*, 127 S.W.3d 690, 694 (Mo. App. W.D. 2004); section 452.370. A change in circumstances sufficient to warrant modification of maintenance may exist where the paying spouse is unable to pay the assigned amount of maintenance or the receiving spouse could meet her reasonable needs with a lower amount. *Eaton*, 127 S.W.3d at 694. However, not every change in circumstances will mechanically justify a modification, as these motions will only be appropriate in unusual situations. *Haynes v. Almuttar*, 25 S.W.3d 667, 672 (Mo. App. W.D. 2000).

To find a substantial change in circumstances warranting modification of maintenance based upon cohabitation, the evidence must support the conclusion that the relationship is of a nature that it substitutes as a marriage. *Hopkins*, 449 S.W.3d at 798. A modification analysis focuses less on the nature of the relationship and more on how the relationship impacts the financial circumstances of the party receiving maintenance. *See Lombardo v. Lombardo*, 992 S.W.2d 919, 923 (Mo. App. W.D. 1999); *Butts*, 906 S.W.2d at 863-64; *see also C.K.*, 325 S.W.3d at 435; *Hopkins*, 449 S.W.3d at 799-800; *Herzog*, 761 S.W.2d at 268-69 (each analyzing or discussing modification based on finances of the parties *after* determining the relationship at issue was not a substitute for marriage). "Rather than focusing solely on cohabitation itself, it

18

seems the best way of formulating rules that [deal] with cohabitation, is to embrace the rule that economic implications of cohabitation for the spouse receiving maintenance must be addressed before the maintenance award may be modified...." *Lombardo*, 992 S.W.2d at 923 (citing *Butts*, 906 S.W.2d at 863). Ultimately, in determining whether a substantial change in circumstances has occurred, the trial court should consider the extent to which a party's expenses are or should be shared by a cohabitant. *C.K.*, 325 S.W.3d at 435.

### b.    Analysis

As an initial note, this Court is presented with little evidence reflecting Wife's reasonable needs and the impact of her cohabitation with Lewis. However, the record reveals that neither party requested any specific findings of fact and conclusions of law. Rule 73.01 authorizes litigants to request trial courts to set forth specific factual and legal findings in reaching its judgment. *See* Rule 73.01(c). When a litigant fails to so request and no specific findings have been made on a factual issue, such findings are interpreted as having been found in accordance with the trial court's judgment. *O'Gorman & Sandroni, P.C. v. Dodson*, 478 S.W.3d 539, 543 (Mo. App. E.D. 2015); *Flaiz v. Director of Revenue for State of Mo.*, 182 S.W.3d 244, 252 (Mo. App. W.D. 2005).

Regarding Wife's relationship and cohabitation with Lewis, the trial court concluded in relevant part:

> [Husband] failed to establish that the current maintenance arrangement is unconscionable. Evidence was adduced that [Wife] suffers from significant disabilities that preclude her from obtaining gainful employment, and it does not appear from the evidence that her cohabitation with her boyfriend has changed the circumstances to such a substantial and continuing degree to make the current maintenance award unreasonable. *See Nelson v. Nelson*, 14 S.W.3d 645, 650 (Mo. App. E.D. 2000). And this is especially true in light of the fact that maintenance has already been reduced once.

Here, the evidence reveals, in accordance with the trial court's judgment, that pursuant to the terms of the Prior Consent Modification, Wife currently receives $1,953.34 per month from

19

Husband in maintenance. Conflicting evidence was presented regarding Wife's reasonable needs, but they appear to range between $1,929.00 and $2,159.00 per month. However, this amount includes $500.00 per month for "rent," in which there is conflicting evidence as to the frequency and actual amount paid by Wife. Moreover, the trial court found that Wife "suffers from significant disabilities that preclude her from obtaining gainful employment." This finding was not against the weight of the evidence and is supported by substantial evidence. *See Ivie*, 439 S.W.3d at 199-200, 206; *Hopkins*, 449 S.W.3d at 802-03. Further, because Husband failed to request specific findings of fact and conclusions of law, we assume the trial court accounted for the conflicting evidence in entering its judgment. *See id.*; *see also Flaiz*, 182 S.W.3d at 252.

Accordingly, Wife presented evidence that she had reasonable needs that she could not meet without the support of Husband, even when accounting for Lewis' contributions to Wife's living expenses. Although conflicting evidence existed, we will defer to the trial court's determination that such evidence did not amount to a substantial and continuing change of circumstances, and we assume the trial court accounted for such conflicting evidence in making its judgment. *See Hopkins*, 449 S.W.3d at 802-03. On the other hand, Husband submitted no evidence that he could not pay, and as such, failed to meet his burden of proving by detailed evidence that substantial and continuing changed circumstances compelled modifying the maintenance award. *See Barden*, 463 S.W.3d at 804. Further, accepting as true the evidence and inferences favorable to the judgment, we conclude the trial court's judgment is not against the weight of the evidence and is supported by substantial evidence. *See Hopkins*, 449 S.W.3d at 802-03.

Therefore, we affirm the trial court's denial of Husband's Motion to Modify, finding the trial court's judgment is not against the weight of the evidence and is supported by substantial evidence, and thus, the court did not abuse its discretion. Points two and three are denied.

20

## III. CONCLUSION

For the foregoing reasons, we hold that maintenance is subject to future modification pursuant to section 452.370. Therefore, that portion of the judgment granting Wife's Motion to Dismiss Husband's Motion to Modify is reversed. That portion of the judgment denying Husband's Motion to Modify is affirmed.

_____
ROBERT M. CLAYTON III, Presiding Judge

Lawrence E. Mooney, J., in separate opinion dissents in part and concurs in part.
James M. Dowd, J., in separate opinion concurs in part, concurs in result in part, and dissents in part.

21



# In the Missouri Court of Appeals
# Eastern District

| | | |
|---|---|---|
| MICHAEL PAUL HUGHES, | ) | No. ED103535 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 2105FC-09706-03 |
| | ) | |
| JILLISA COLLEEN HUGHES, | ) | Honorable Sandra Farragut-Hemphill |
| | ) | |
| Respondent. | ) | Filed: December 13, 2016 |

### OPINION DISSENTING IN PART AND CONCURRING IN PART

I dissent from Section II B of the principal opinion, which holds the trial court erred in granting wife's motion to dismiss.

The case presents a simple and common scenario. Parties to a divorce entered into a detailed settlement agreement specifying when maintenance might be modified. They dutifully sought to have the trial judge incorporate the separation agreement into the court's judgment. But the preprinted form for dissolution judgments required that the judge characterize the maintenance as being either "not subject to modification" or "subject to modification," pursuant to a local court rule. Local Rule 68.10(1), Twenty-first Judicial Circuit, St. Louis County, Missouri. The parties and judge sensibly and correctly characterized the maintenance as "subject to modification" because, if the specified circumstances outlined in their agreement occurred, it would indeed be modifiable. Thus, the dissolution judgment specified the conditions

that might lead to modification and characterized the maintenance as modifiable given the two preprinted choices the form offered.

This choice of the preprinted designation of the maintenance as modifiable does not negate the parties' detailed settlement agreement, which was incorporated into the judgment. This choice of the preprinted designation should be harmonized with the settlement agreement; they are both part of the same judgment. *See Boden v. Boden*, 229 S.W.3d 169, 173 (Mo. App. E.D. 2007). Both law and logic command that we should avoid an interpretation that renders some provisions meaningless and that specific agreement by the parties will always trump contradictory preprinted general language. *See Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 963 S.W.2d 392, 397 (Mo. App. W.D. 1998). And here it is worth remembering that the preprinted language is not even contradictory, but rather incomplete. The preprinted language provided that the maintenance is "subject to modification," but didn't specify the circumstances that would render it modifiable. Of course, that is exactly why the parties and the trial judge incorporated the separation agreement into the judgment, so that the circumstances that might allow for modification would be unmistakable. The principal opinion renders the detailed separation agreement incorporated into the dissolution judgment meaningless.

Because the parties negotiated a separation agreement that allowed maintenance only under specified circumstances that have not occurred, the maintenance is not modifiable absent those circumstances. Thus, I would affirm the trial court's dismissal of the motion to modify.

I fully concur in Section II C of the principal opinion denying appellant's points II and III.

LAWRENCE E. MOONEY, JUDGE

2



# In the Missouri Court of Appeals
# Eastern District
## DIVISION THREE

| | | |
|---|---|---|
| MICHAEL PAUL HUGHES, | ) | No. ED103535 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of St. Louis County |
| vs. | ) | 2105FC-09706-03 |
| | ) | |
| JILLISA COLLEEN HUGHES, | ) | Honorable Sandra Farragut-Hemphill |
| | ) | |
| Respondent. | ) | Filed: December 13, 2016 |

I concur with the principal opinion's reasoning and result with respect to the first point which reverses the trial court's dismissal of the motion to modify because I agree that the maintenance award is modifiable. I also concur in result only in the principal opinion's decision with respect to the third point. However, with respect to the second point, I respectfully dissent because I find that Wife's relationship with Lewis constitutes a substitute for marriage so as to require termination of Husband's maintenance obligation to Wife.

Missouri courts have recognized the basic unfairness in requiring a party to continue to support with maintenance his or her former spouse who has entered into a long term or permanent relationship which has some of the benefits of marriage but few of the detriments. *Herzog v. Herzog*, 761 S.W.3d 267, 268 (Mo.App.E.D. 1988). Here, it is undisputed that Wife and Lewis are in, and desire to remain in, a committed, romantic relationship where they share a home and have agreed to a financial arrangement that suits their relationship. While they have made the decision not to undergo the formal marriage ceremony, it can hardly be disputed that

the relationship between Wife and Lewis is as much like a "marriage" as many of the legally recognized marriages in this state, and I believe equity demands that they should be treated as such for purposes of maintenance. See *Schuchard v. Schuchard*, 292 S.W.3d 498, 500-01 (Mo.App.E.D. 2009) (finding that equitable principles warranted a conclusion that wife's rights to support from the prior marriage had been abandoned by wife's open relationship with her "life partner" whom she shared a residence and bank accounts with despite not being legally married).

The principal opinion leaves open the possibility that Wife and Lewis's relationship may someday rise to the level of a substitution of marriage, but concludes that the evidence at this point is insufficient to make that finding. What more needs to be shown? Wife and Lewis have been in a committed relationship for nearly as long as Husband and Wife's seven-year marriage and both testified that they intend to remain committed to one another for the foreseeable future. I find it unfair to require Husband to pay Wife maintenance while Wife and Lewis enjoy the benefits of their marriage-like relationship, especially when considering that Wife and Lewis's substantial joint resources are being supplemented by Husband's on-going maintenance payments. See § 452.370.1. Accordingly, I would reverse the trial court's decision and terminate Husband's maintenance to Wife based upon the equitable finding that Wife's relationship with Lewis constitutes a substitute for marriage.

_____
JAMES M. DOWD, Judge

2