325 S.W.3d 431 (2010)
C.K., Petitioner/Respondent,
v.
B.K., Respondent/Appellant.
No. ED 93632.
Missouri Court of Appeals, Eastern District, Division Three.
September 7, 2010.
Application for Transfer to Supreme Court Denied October 26, 2010.
Application for Transfer Denied December 21, 2010.
*432 Alan E. Freed, Clayton, MO, for Appellant.
Richard J. Eisen, Jennifer Growe Soshnik, St. Louis, MO, for Respondent.
SHERRI B. SULLIVAN, P.J.

Introduction
B.K. (Father) appeals from the trial court's judgment modifying a decree of dissolution upon Father's Motion to Modify the Modified Decree of Dissolution (Motion to Modify) seeking to modify or terminate his maintenance obligation to C.K. (Mother). We affirm.

Factual and Procedural Background
Father and Mother were married in October 1989. Two children were adopted during the marriage, D., born January 2, 2000, and N., born January 12, 2000 (collectively the Children). In 2002, the trial court entered its Judgment of Dissolution, in which the court ordered Father to pay Mother $12,000 in monthly maintenance and $1,482 in monthly child support. The court ordered that Father and Mother share joint physical and legal custody of the Children.
On January 31, 2008, Father filed his Motion to Modify seeking an order terminating or reducing his maintenance obligation to Mother and modifying the parenting *433 plan by granting Father additional time with the Children. Father alleged there was a substantial and continuing change of circumstances since the original judgment of dissolution warranting termination or modification of his maintenance obligation, in that Mother had entered into a permanent relationship amounting to a substitution for marriage with John Ashton (Ashton); Mother was now able to contribute to her own financial needs through full-time employment; and Mother's monthly expenses had decreased.
On November 25, 2008, Mother sought leave to file an amended motion to seek a modification of child support. The court denied Mother leave to filed the amended motion.
On May 7, 2009, the trial court entered its Findings of Fact and Judgment. The court found that Mother should not be required to seek employment outside the home at that time, reduced the maintenance award to $6,300 per month, and ordered Father to pay $20,000 towards Mother's attorney fees. The parties settled the custody issues raised by Father's Motion to Modify, and the court accepted the parties' agreed parenting plan. On September 6, 2009, the trial court entered two amended Judgments, in response to the parties' post-judgment motions, making minor adjustments to the modified judgment. This appeal follows.

Points Relied On
In his first point on appeal, Father argues the trial court erred and abused its discretion by failing to terminate Father's maintenance obligation because the overwhelming weight of the evidence and testimony presented at trial established that the relationship between Mother and Ashton constituted a "substitute for marriage" under the law established by Herzog v. Herzog, 761 S.W.2d 267 (Mo.App. E.D. 1988), in that the couple's cohabitation, birth of a child, financial interdependence, and acknowledgment of their long-term commitment to one another, together with other indicia of a permanent relationship, proved that Mother has abandoned her right to support from Father.
In his second point on appeal, Father argues the trial court erred and abused its discretion by finding that Mother was not required to find employment because the court failed to follow the case law interpretation of the statutory factors in determining maintenance in that, by failing to impute a $30,000 annual income to Mother as stipulated by the parties, and by failing to consider the undisputed fact that any need for day care results from her choice to have a child in a relationship that is a substitute for marriage, the court failed to require her to make an effort to provide for her own needs.
In his third point on appeal, Father argues the trial court erred by ordering him to pay $20,000 to Mother's attorneys because this order constitutes an abuse of discretion in that Father's voluntary and generous decision to forego a judgment of close to $100,000 against Mother for retroactive maintenance, combined with the fact that the litigation became necessary solely as a result of Mother's unilateral decision to enter into a relationship that is a substitute for marriage, renders any attorney's fees judgment against Father inequitable.

Standard of Review
On appeal, we will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. Haynes v. Almuttar, 25 S.W.3d 667, 671 (Mo.App. W.D.2000). This court views the evidence in the light most favorable to the decision and disregards contradictory evidence. *434 Id. We defer to the trial court's superior opportunity to judge the credibility of the witnesses. Id.

Discussion

Point ITermination of Maintenance
In his first point, Father contends the trial court erred by failing to terminate his maintenance obligation because the overwhelming weight of the evidence established that Mother's relationship with Ashton constituted a "substitute for marriage."
To justify a modification of maintenance, the movant must demonstrate a change of circumstances so substantial and continuing as to make the terms of the original decree of dissolution unreasonable. Section 452.370.1;[1]Brooks v. Brooks, 957 S.W.2d 783, 786 (Mo.App. W.D.1997). As the party seeking modification, Father bears the burden of proving the changed circumstances. Fowler v. Fowler, 21 S.W.3d 1, 4 (Mo.App. E.D.2000). "We will not reverse the trial court's award of maintenance absent an abuse of discretion." Brooks, 957 S.W.2d at 786.
In determining whether a substantial change in circumstances has occurred, the court shall consider the financial resources of the parties, including the extent to which the reasonable expenses of either party are, or should be, shared by someone the party is cohabitating with. Section 452.370.1.
Father argues on appeal that the trial court erred in failing to take the additional step of terminating Mother's maintenance based on a finding that Mother had entered into a relationship of such permanence that it is a substitute for marriage pursuant to Herzog.
In Herzog, 761 S.W.2d 267, this court considered whether the post-dissolution cohabitation of a spouse receiving maintenance authorized the modification or termination of a maintenance award. At the time Herzog was decided, the statute governing the modification of maintenance did not specifically provide that cohabitation was a consideration on a motion to modify maintenance. Id. at 268.[2] The Herzog court noted that cohabitation was an issue in maintenance modification proceedings because the new relationship does not carry a legal obligation of support, yet there was a basic unfairness in requiring a prior spouse to continue supporting a spouse who has entered into a relationship with some of the benefits of, but few of the detriments of, marriage. Id. at 268.
The Herzog court stated that where the relationship has achieved a level of permanence sufficient to support the conclusion that it has become a substitute for marriage, equitable principles warrant a finding that the spouse has abandoned his or her right to support from the prior spouse. Id. at 268-69. Modification may be justified when the receiving spouse has substantial continuing support from a third party regardless of whether the relationship is permanent. Id. at 269. Under Herzog, it is the court's responsibility to evaluate the relationship to determine whether equity justifies termination or modification of maintenance on the basis of that changed condition alone. Id. at 268.
In this case, the first question is whether Mother's relationship with Ashton rises to the level of a relationship that is a "substitute for marriage." Father argues the overwhelming evidence established that it does. Specifically, Father argues *435 that Mother and Ashton have been in a monogamous relationship since 2003; have established a home together as a cohabitating couple since 2006; have a child together; and intend to remain in a permanent, committed relationship.
In making its determination, the trial court considered these facts as supporting a finding of a permanent relationship. The court also found that Ashton attempted to conceal the true nature of his and Mother's cohabitation by renting a room outside their home 16 months after he moved to St. Louis. However, the court also considered that the parties have not engaged in a commitment service; do not hold themselves out to be married; have no present intent to get married; and that Ashton has not placed himself in a position to replace Father in the Children's lives.
Although the trial court did not make an explicit finding that Mother and Ashton's relationship did not rise to the level of a "substitute for marriage" justifying termination of maintenance, such a finding is apparent from the language of the court's judgment. The court found that they had entered into "a relationship of sufficient permanence to support an equitable modification of Father's maintenance obligation." This finding indicates that the trial court was treating the relationship as one of cohabitation justifying modification under Section 452.370.1, and not as a substitute for marriage under Herzog.
In addition to the evidence already noted, the record also indicates that Mother and Ashton do not commingle their finances, have no joint bank accounts or credit cards, are not named as beneficiaries on each other's life insurance policies, have not provided for each other in their wills, and have not discussed getting married. Based on the evidence in the record, the trial court did not err in treating Mother and Ashton's relationship as one of cohabitation and not as a substitute for marriage.
As already noted, the trial court can consider the extent to which a party's expenses are or should be shared by a cohabitant when determining whether a substantial change in circumstances has occurred. Section 452.370.1; Gal v. Gal, 937 S.W.2d 391, 394 (Mo.App. E.D.1997). Father acknowledges that a reduction of maintenance, instead of termination, is appropriate where a relationship involves cohabitation but does not reach the level of a substitute for marriage.
In reducing maintenance, the trial court assessed Mother's reasonable needs to be $7,300 per month, well below the $14,795 alleged by Mother in her statement of expenses. Then, consistent with Section 452.370.1, the court considered the extent to which Mother's expenses are or should be shared by Ashton. The evidence established that Ashton was not providing any meaningful ongoing financial support to Mother. The court found, however, that Ashton should provide $2,000 a month toward Mother's expenses and the household, in addition to paying his own expenses and the expenses of their infant child. Based on these findings, Mother had an unmet need of approximately $5,300 net per month. The court ordered Father to pay Mother $6,300 in maintenance in order for Mother to meet her reasonable needs and pay taxes.
The trial court did not abuse its discretion in reducing Father's maintenance obligation from $12,000 to $6,300 per month after assessing Mother's reasonable needs and Ashton's reasonable expected contribution to the household. Father's Point I is denied.

Point IIImputed Income
In his second point, Father argues the trial court abused its discretion in failing *436 to impute income to Mother in determining the maintenance award.
Prior to trial, the parties stipulated that Mother could earn income of $30,000 from employment if she was employed outside the home. The trial court noted that while Mother had previously been employed in professional positions, she became a stay-at-home parent, per the agreement of the parties, when the Children were adopted. The court found if Mother was employed outside the home she would incur childcare costs of $540 per month, resulting in a net income of approximately $1,500 per month. The court found that it is in the best interests of the Children that Mother continue as a stay-at-home parent, and that this is a luxury that the parties can afford for the Children. The court concluded that the circumstances of the family made it inappropriate for Mother to be required to seek employment outside the home at this time.
On appeal, Father argues that Mother has a continuing duty to exert reasonable efforts to attain self-sufficiency and that Mother would only incur childcare expenses for her infant son with Ashton since the Children are in school. Father also contends the court incorrectly concluded that it is in the best interests of the Children for Mother to continue as a stay-at-home parent because the self-sufficiency of both parents is in the Children's best interests.
A spouse seeking maintenance has an affirmative duty to seek employment after the divorce. Breihan v. Breihan, 73 S.W.3d 771, 775 (Mo.App. E.D. 2002). A spouse's failure to make a good faith effort to become self-supporting may be the basis for modification of a maintenance award, but it does not mandate modification. Fowler, 21 S.W.3d at 4. The trial court may impute income to a party seeking maintenance according to what she could earn by use of her best efforts to gain employment suitable to her capabilities. Breihan, 73 S.W.3d at 775. The trial court's determination of whether to impute income to a party is within its discretion and we will not reverse the trial court's determination absent a manifest abuse of that discretion. Jones v. Jones, 958 S.W.2d 607, 611 (Mo.App. W.D.1998).
Father suggests that the court's refusal to impute income to Mother relieves her of her duty to become self-sufficient, which is not in the best interests of the Children. Under the facts and circumstances of this case, the trial court did not err in refusing to impute $30,000 in employment income to Mother. Although Mother worked during the parties' marriage, Mother was not employed outside the home, by agreement of the parties, after the Children were adopted. Mother's projected net income of $1,500 per month is relatively small compared to Mother's reasonable needs of $7,300 per month. Based on the evidence at trial, it is clear that if Mother worked outside the home, she would not be self-sufficient. The trial court could have reasonably found that the relatively small amount of income Mother could contribute does not outweigh the benefit to the Children of having a stay-at-home parent, at least for the present time. The court has not relieved Mother of her duty to become self-sufficient, but instead simply found that it was inappropriate for Mother to work outside the home at this time.
Father's contention that Mother's need for childcare is based solely on the birth of a new child is completely without merit. The trial court found that Mother would incur childcare costs of $540 per month if she went back to work. This amount is consistent with Mother's testimony that this would be the cost of childcare for the *437 older children and does not include the costs of care for the new child.
The trial court did not abuse its discretion in failing to impute income to Mother at this time. Father's Point II is denied.

Point IIIAttorney fees
Last, Father contends the trial court abused its discretion in ordering him to pay $20,000 of Mother's attorney fees because Father voluntarily and generously decided to forego a judgment of almost $100,000 against Mother for retroactive maintenance, and the litigation was necessary solely as result of Mother's decision to enter into a relationship with Ashton.
Section 452.355 authorizes the trial court to award attorney fees after considering "all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action[.]" Section 452.355.1 RSMo 2006. "One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." Stufflebean v. Stufflebean, 941 S.W.2d 844, 847 (Mo.App. W.D.1997). An award of attorney's fees is within the trial court's discretion. Lueckenotte v. Lueckenotte, 34 S.W.3d 387, 399 (Mo. banc 2001). The trial court's decision is an abuse of discretion when it is against the logic of the circumstances and is so arbitrary and unreasonable that it shocks one's sense of justice. Id.
Father places significant emphasis on his decision to forego a judgment for overpaid maintenance. This was a relevant factor for the court to consider, and it is clear that the court did so because it specifically set it out as a factor in the judgment. However, this was not the only factor for the court's consideration. In making its determination the court considered the relative resources of the parties, the merits of the case, and the actions of the parties during litigation. Specifically, the court found that both parties took positions that increased the contentiousness of the litigation and fueled the acceleration in fees and expenses. The court also considered the financial resources of the parties. Father reported earnings of $710,000 per year, while Mother is not employed outside the home. Father has substantial income and the financial resources to make the payment while Mother does not. The trial court did not abuse its discretion in ordering Father to pay $20,000 of Mother's attorney fees. Father's Point III is denied.

Conclusion
The judgment of the trial court is affirmed.
CLIFFORD H. AHRENS and LAWRENCE E. MOONEY, JJ., concur.
NOTES
[1] All statutory references are to RSMo 2008, unless otherwise indicated.
[2] The statute was subsequently amended to provide for such consideration. See Section 452.370 RSMo 1994.