

# In the Missouri Court of Appeals
## Eastern District

### DIVISION ONE

| | |
|---|---|
| KRISTEN L. MAIN, | ) |
| | ) |
| Respondent, | ) No. ED111716 |
| | ) |
| vs. | ) |
| | ) Appeal from the Circuit Court of |
| DONET C. MAIN, | ) St. Louis County |
| | ) |
| Appellant. | ) |
| | ) Honorable Margaret T. Donnelly |
| and | ) |
| | ) |
| ETHAN MAIN, | ) |
| | ) |
| Intervenor. | ) Filed: February 27, 2024 |

### Introduction

Donet C. Main ("Husband") appeals the circuit court's judgment overruling his motion to terminate his maintenance obligation to Kristen L. Main ("Wife") based on Wife's relationship with D.S. ("Partner"), which Husband argues is a substitute for marriage. Husband raises three points on appeal. In Point I, Husband argues the circuit court erroneously applied the law in overruling his motion to terminate maintenance by improperly focusing on whether Partner financially supported Wife rather than the permanence of their relationship. In Point II, Husband argues the circuit court abused its discretion in overruling his motion to compel discovery of bank records held by a Colorado limited liability company ("Colorado LLC") Wife owns with Partner

because the records were relevant to Husband's motion to terminate maintenance to the extent the circuit court properly focused on Partner's financial support of Wife. In Point III, Husband argues the circuit court abused its discretion in ordering him to pay a portion of Wife's attorney's fees because his motion to terminate maintenance asserted valid arguments and was brought in good faith.

This Court holds the circuit court did not erroneously apply the law in overruling Husband's motion to terminate his nonmodifiable maintenance obligation to Wife. Point I is denied. Because the circuit court did not abuse its discretion in overruling Husband's discovery request and Husband suffered no prejudice, Point II is denied. Finally, the circuit court did not abuse its discretion in ordering Husband to pay a portion of Wife's attorney's fees after considering all relevant factors. Point III is denied. The circuit court's judgment is affirmed.

**Factual and Procedural History**

Husband and Wife were married in May 1998, and separated in December 2011. In February 2015, the circuit court entered its dissolution decree, which incorporated the parties' separation and property settlement agreement ("separation agreement"). The dissolution decree ordered Husband to pay nonmodifiable maintenance to Wife as set forth in the separation agreement. The separation agreement provided Husband shall pay "contractual, non-modifiable maintenance" to Wife over the course of eight years with the amount gradually decreasing until Husband's maintenance obligation terminated in February 2023. The separation agreement further stated the dissolution decree "shall not be subject to modification by any court, however, the parties may at any time modify the terms of the [separation] [a]greement by mutual agreement in writing." The parties never agreed in writing to modify Husband's nonmodifiable maintenance obligation.

2

Neither the dissolution decree nor separation agreement specified any condition, other than satisfaction of the maintenance schedule, terminating Husband's maintenance obligation.

Shortly after the parties' dissolution was final, Wife moved into Partner's home, to which Partner holds the title and mortgage in his name alone. Wife's youngest son also lives at this residence, as has Wife's older children and Partner's daughter at various times. Partner lived in Georgia from 2016 through 2019, and currently lives in Texas three months of the year for work. Wife and Partner have tattoos referencing their relationship. Partner bought Wife a cocktail ring, but the parties are not engaged nor did they obtain a marriage license. Wife and Partner vacation together with their children. Partner held himself out as the stepfather to Wife's son on one occasion.

Wife makes regular monthly payments to Partner for her share of household expenses, including for the joint credit card Wife and Partner hold. Wife reimburses Partner when he purchases items on her behalf or for her children. Wife pays for her family's portion of vacation expenses. When Wife was unemployed, she repaid Partner for the months she was unable to pay her share of monthly expenses. Wife and Partner jointly own the Colorado LLC which holds the mortgage to two condominiums. Wife and Partner jointly hold and have access to the Colorado LLC's bank account. Wife and Partner share and pay expenses and deposit funds into this bank account.

In July 2020, Husband moved to terminate his maintenance obligation, arguing Wife's relationship with Partner was of such a permanent nature it became a substitute for marriage under this Court's holding in *Herzog v. Herzog*, 761 S.W.2d 267 (Mo. App. E.D. 1988). Husband claimed his maintenance payments were supporting Wife's new family, including Partner, and argued equitable principles warranted a finding maintenance should be terminated effective the

3

date of the filing. Wife moved to dismiss Husband's motion, arguing neither the dissolution decree nor the separation agreement specified any condition, besides satisfaction of the maintenance payment schedule, terminating Husband's nonmodifiable maintenance obligation. Wife requested attorney's fees and costs. Husband also sought discovery of the Colorado LLC's bank records, to which Wife objected. The circuit court initially sustained Wife's objection finding the request was overbroad, but advised Husband the ruling could be revisited if he received additional documentation regarding whether Wife and Partner shared bank accounts.

After deposing Wife, Husband moved to compel discovery of the Colorado LLC's bank records from August 2016 going forward. Husband argued Wife admitted she and Partner co-owned the Colorado LLC, held a joint bank account for the Colorado LLC's benefit, and shared expenses and deposits. Husband stated "[t]he existence of a bank account, shared expenses, and shared property" was "an essential component" of his motion to terminate maintenance to bolster his claim Wife and Partner's relationship was a substitute for marriage. Partner filed a limited entry of appearance to oppose discovery of these bank records. Partner argued the bank records were irrelevant because they were property of a third-party business, the records were outside of Wife's possession, custody, and control, the request was overly broad, and if produced, the bank records would reveal sensitive financial documents of nonparties without a protective order. The circuit court overruled Husband's motion to compel discovery without comment.

The circuit court held a hearing on Husband's motion to terminate maintenance in April 2022, at which Wife and Husband testified. Wife testified about the nature of her relationship with Partner, their operation of the Colorado LLC, and her current employment. Wife testified she would have to move out of their shared residence if Partner did not want her to stay because he owned the home. Husband conceded nothing in the separation agreement stated he

4

could request an increase or decrease in the amount or duration of maintenance. Husband agreed the separation agreement did not contain a cohabitation clause. When asked if Husband had any documentation reflecting Wife and Partner had a marriage license, Husband testified, "[N]o formal written documentation. Only what people have told me." Husband stated it was his "personal belief that they are married, or at least hold themselves out to be married." Husband was questioned about his misconduct during the marriage. The circuit court admonished Wife's counsel because it believed this line of questioning was a "waste of time" and it "certainly won't be awarding fees for these minutes that we're wasting."

The circuit court issued detailed findings of fact and conclusion of law. The circuit court found the dissolution decree and separation agreement clearly stated Husband's maintenance obligation was nonmodifiable, but were silent about whether maintenance would continue past remarriage or death. Because the maintenance was nonmodifiable, the circuit court determined it could not consider modification based on a change in circumstances. The circuit court found credible evidence Wife and Partner were in a committed relationship. Yet, the credible evidence also showed neither Partner nor Wife provide financial support for each, Wife contributed equally to the household and other expenses, and Wife repaid Partner for monthly household expenses when she was unemployed. The circuit court further found Wife did not have "the same security she would in a marriage" because she lives with Partner "subject to his willingness to have her there." The circuit court found "it was clear [Wife] and [Partner] care for each other and are sharing expenses . . . [but] this is not a relationship of such a nature that it is a substitute for marriage" and overruled Husband's motion to terminate his maintenance obligation. The circuit court ordered Husband to pay a portion of Wife's attorney's fees after considering the relevant statutory factors.

5

Husband moved for a new trial, to reopen the evidence, or to vacate, correct, amend, modify or set aside the judgment. Husband argued, among other things, the circuit court erred in failing to order his maintenance obligation be terminated as of the date Wife's relationship with Partner began because he presented more than fifty pieces of evidence demonstrating their relationship was a substitute for marriage. Husband further claimed the meaning of "remarriage" has been extended under Missouri law to include substitutes for marriage. Wife reiterated the parties agreed Husband's maintenance obligation would be nonmodifiable and he failed to present any evidence to support his burden. The circuit court overruled Husband's motion. Husband appeals.

**Discussion**

*Point I: Termination of Maintenance*
*Party Positions*

Husband argues the circuit court erroneously applied the law in overruling his motion to terminate maintenance by improperly focusing on whether Partner financially supported Wife rather than the permanence of their relationship. Husband maintains the circuit court's erroneous application of law materially affected the merits of the action. Wife contends the circuit court appropriately analyzed whether Wife and Partner's relationship was a substitute for marriage. Wife further contends Husband failed to cite any authority in which an appellate court overturned a circuit court's finding a maintenance recipient's cohabitation was not a substitute for marriage.

*Standard of Review*

This Court will affirm the circuit court's judgment declining to terminate Husband's maintenance obligation "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *C.K. v. B.K.*, 325 S.W.3d 431, 433 (Mo. App. E.D. 2010). This Court views "all evidence and reasonable inferences therefrom in the light most favorable to the prevailing party, and all factual issues upon which the [circuit] court

6

elected not to make specific findings of fact are considered to have been found in accordance with the [circuit] court's judgment." *Hughes v. Hughes*, 505 S.W.3d 458, 462 (Mo. App. E.D. 2016). "This Court gives great deference to the [circuit] court's superior opportunity to adjudge the credibility of witnesses and the weight given their testimony." *Taormina v. Taormina*, 639 S.W.3d 482, 488 (Mo. App. W.D. 2021) (quoting *Barden v. Barden*, 546 S.W.3d 582, 588 (Mo. App. E.D. 2018) (citation omitted)).

*Analysis*

This Court recognizes three types of maintenance awards:

> (1) 'contractual maintenance', a private contractual maintenance provision in a separation agreement approved by the court but not incorporated into the dissolution decree at the express request of the parties; (2) 'separation agreement decretal maintenance', a maintenance provision of a separation agreement which is incorporated into the dissolution decree; and (3) 'decretal maintenance', a maintenance award granted by the court in the absence of a separation agreement.

*Peaslee v. Peaslee*, 844 S.W.2d 569, 572 (Mo. App. E.D. 1992) (citing *Davis v. Davis*, 687 S.W.2d 699, 701 (Mo. App. E.D. 1985)). In *Cates v. Cates*, 819 S.W.2d 731 (Mo. banc 1991), the Supreme Court of Missouri explained:

> The distinction drawn in the cases between contractual and decretal maintenance finds its root in the old alimony statutes and serves two functional purposes. The first is procedural and determines the manner in which a maintenance obligation can be enforced. 'The terms of an agreement set forth in the decree are enforceable by all remedies available for enforcement of a judgment.' Section 452.325.5. Contractual maintenance, on the other hand, arises where the 'maintenance provisions were not to be incorporated into the decree.' *Ebinger v. Berry,* 622 S.W.2d 394, 396 (Mo. App. E.D. 1981). *See* Section 452.325.4(1) ('If the separation agreement provides that its terms shall not be set forth in the decree.'). Contractual maintenance is enforceable by a separate action for breach of contract. *Haggard v. Haggard,* 585 S.W.2d 480, 481–82 (Mo. banc 1979).
>
> The second function is more substantive. Section 452.325.6 permits the parties to agree that maintenance cannot be modified by the court. This is 'contractual" maintenance. Apparently for ease of enforcement of the maintenance agreement,

parties often, as here, incorporate 'contractual' maintenance within the dissolution decree. This hybrid is decretal for purposes of enforcement and contractual for purposes of modification.

*Cates*, 819 S.W.2d at 737.

The separation agreement characterizes Husband's obligation as "contractual, non-modifiable maintenance." But, there is no dispute the maintenance terms were incorporated into the dissolution degree. Therefore, this Court finds the maintenance provision at issue here is separation agreement decretal maintenance because the parties agreed to the maintenance terms in their separation agreement and incorporated those terms into the dissolution decree.

Husband asks this Court to find the circuit court erroneously applied the law in overruling his motion to terminate his nonmodifiable maintenance obligation to Wife. Husband's argument is unpersuasive.

Here, as in *Cates*, it is undisputed the circuit court's dissolution decree ordered Husband to pay nonmodifiable maintenance to Wife as set forth in the separation agreement. The separation agreement also provides Husband shall pay nonmodifiable maintenance to Wife for a period of time with a maintenance schedule ending in February 2023. The separation agreement contains no language indicating any circumstance under which Husband may seek to terminate his maintenance obligation early. The separation agreement further provides the dissolution decree "shall not be subject to modification by any court" unless the parties mutually agree to the modification in writing. "[W]hen the parties expressly agree to preclude modification of maintenance and the court incorporates that agreement into the decree, the agreement is binding on the court." *Peaslee*, 844 S.W.2d at 572 (quoting *Davis*, 687 S.W.2d at 702). Thus, the plain language of the dissolution decree and the separation agreement prohibit Husband from seeking modification of his nonmodifiable maintenance obligation.

"Section 452.370 describes when and if an award of maintenance can be modified or terminated." *Simpson v. Simpson*, 352 S.W.3d 362, 363 (Mo. banc 2011).[1] "Section 452.370.3 specifically addresses when maintenance shall be terminated." *Id*. Section 452.370.3 provides, "Unless otherwise agreed in writing or expressly provided in the judgment, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance."

Wife has not remarried; thus, Husband cannot modify his nonmodifiable maintenance obligation statutorily. He instead seeks to apply the judicially created equitable remedy articulated in *Herzog* to terminate his maintenance obligation. Husband argues Wife's relationship with Partner achieved a permanence sufficient to find it is a substitute for marriage and should terminate his nonmodifiable maintenance obligation. Husband claims the circuit court erroneously applied the law when it focused on the financial support Partner provides Wife rather than the permanence of their relationship. In *Herzog*, the husband sought to modify his maintenance obligation to his wife after she began cohabiting with her partner. *Herzog* noted "non-marital cohabitation presented a vexing problem" in relation to maintenance modifications because these "relationships do not normally carry with them the legal obligation of support which are part of the marriage contract, and may be terminated at any time with no legal repercussions for support." *Id*. at 268. *Herzog* recognized, however, "there is a basic unfairness in requiring a prior spouse to continue support of a spouse who has entered into a long term or permanent relationship having some of the benefits of marriage but few of the detriments." *Id*. *Herzog* set forth the following test:

> Where the relationship has achieved a permanence sufficient for the [circuit] court to conclude that it has become a substitute for marriage, equitable principles warrant a conclusion that the spouse has abandoned his or her rights to support from the prior marriage and is looking to the new relationship in that regard. Permanence

---

[1] All statutory references are to RSMo (2016), unless otherwise indicated.

may be found from either the time involved or the intentions of the persons involved. Of course, substantial continuing support from a third party with or without a permanent relationship may justify a modification as a changed condition. Where a permanent relationship exists, however, the level of support obtained therefrom is, as with remarriage, irrelevant.

*Id.* at 268–69. In *Herzog*, the wife's relatively short cohabitation failed to establish she and her partner were in a permanent relationship. *Id.* at 269. *Herzog* further examined financial evidence and held the husband failed to establish the wife incurred any additional expenses because of her partner or expended any of her money on her partner while it was undisputed her partner did not provide the wife with any support or financial assistance. *Id.* Accordingly, this Court affirmed the circuit court's judgment overruling the husband's motion to modify maintenance. *Id.*

Husband argues the circuit court erroneously applied *Herzog*'s equitable permanence analysis by considering the financial support Partner provided Wife instead of focusing exclusively on the permanence of their relationship. Husband emphasizes he sought termination of his nonmodifiable maintenance obligation under section 452.370.3 because Wife's relationship was a substitute for marriage, as opposed to relying on section 452.370.1 to argue maintenance should be modified because Wife was cohabitating with Partner.[2] Accordingly, Husband believes the *only* relevant inquiry the circuit court should undertake when a party seeks termination under section 452.370.3 is to examine the duration of the relationship and the parties' intentions.

Husband's narrow focus on one aspect of *Herzog*'s holding ignores *Herzog*'s procedural posture and its full analysis. *Herzog* involved a motion to modify, not terminate, maintenance nor was there any indication the maintenance was nonmodifiable.[3] *Herzog*, 761 S.W.2d at 268. The

---

[2] Husband admits when focusing on the level of financial support Wife received from Partner under a section 452.370.1 cohabitation analysis, his motion to terminate was "doomed . . . from the very start" because the amount of maintenance he pays permits Wife to contribute equally to their household expenses.

[3] Because it is unnecessary in reaching our conclusion, this Court does not address whether *Herzog*'s equitable permanence analysis does or does not apply to contractual, nonmodifiable maintenance. That question remains for another court in another case to resolve.

10

third sentence in *Herzog* states, "The evidence at the hearing regarding *the financial circumstances of the parties* does not establish that as a matter of law those *circumstances have changed so substantially* and continually as to make the original award unreasonable." *Id*. (emphasis added). *Herzog* did not limit what evidence a court may consider when assessing the time involved or the intentions of the parties to the relationship. As explained in *Hopkins v. Hopkins*, 449 S.W.3d 793, 799 (Mo. App. W.D. 2014), "Only where the evidence establishes that a cohabitation relationship substitutes as marriage does *Herzog* direct that the *level* of financial support becomes immaterial to the decision to terminate maintenance." (Emphasis in original). "Plainly, in addressing the threshold question of whether cohabitation constituted a substantial change in circumstances because the relationship substituted for marriage, *Herzog* relied on evidence involving the financial support provided between the cohabitants." *Id*.

Addressing *only* the permanence of Wife and Partner's relationship, Husband argues his case is akin to *Taormina*, in which the Western District upheld termination of the husband's modifiable maintenance obligation after finding the wife and her partner's relationship had "long ago achieved a status of permanent relationship" and they had "been holding themselves out as man and wife in all significant respects." *Taormina*, 639 S.W.3d at 487. The facts supporting a permanent relationship was a substitute for marriage in *Taormina* were the wife and her partner had been cohabitating for more than a decade, shared the expenses of building and maintaining a home, and her partner provided the wife with expensive gifts and travel on a private plane. *Id*. at 490. The wife's partner was significantly involved with the wife's family's life events by participating personally in the wife's daughter's wedding by including his name on the invitation, participating in a father-daughter dance, and paying for travel and lodging for wedding guests. *Id*. The wife's partner also provided her with salaried employment which included use of a company-

11

issued car, cellular phone, and credit card. *Id*. Finally, the wife included her partner as a beneficiary on her trust account. *Id*.

Assuming, without deciding, *Herzog* applies to contractual, nonmodifiable maintenance, *Taormina* does not support Husband's position. Initially, this Court notes *Taormina* involved modifiable maintenance and a section 452.370.1 motion to modify, which Husband steadfastly argues distinguishes his case and requires a different analysis. Nevertheless, the evidence Husband provided about Wife and Partner's relationship does not rise to the level of permanence found in *Taormina* regarding duration, familial involvement, sharing of expenses, estate planning, or the building and maintenance of a home. By contrast, Wife lives in Partner's home to which he holds the title and mortgage in his name alone. There was no evidence presented Partner lavishes Wife with expensive gifts, luxury travel, or is significantly involved with her familial relationships, other than an isolated incident in which Partner referred to himself as the stepfather to one of Wife's children. The parties have not provided for each other in their estate planning. The credible evidence further demonstrated Wife and Partner shared household and business expenses, along with Wife reimbursing Partner for items he bought for her or her children.

Even if this Court adopted Husband's narrow reading of *Herzog* and found the circuit court improperly applied it by making findings regarding the parties' financial support of one another, any such error did not materially affect the merits of the action. The circuit court accepted almost all of the evidence Husband presented to prove Wife's and Partner's relationship was a substitute for marriage. Yet, after weighing that evidence, the circuit court concluded the relationship did not constitute a substitute for marriage despite Wife and Partner engaging in a committed relationship which began in March 2014, and sharing expenses. The circuit court explicitly found Husband's evidence did not rise "to the level of Wife and [Partner] holding themselves out as

12

married," and Wife did not "have the same security she would in a marriage" because she lived in Partner's home "subject to his willingness to have her there." While the circuit court did not echo *Herzog*'s "time involved or the intentions of the parties" language, it is clear the circuit court considered the duration of the parties' relationship and their intentions in rejecting Husband's argument Wife entered into a permanent relationship constituting a substitute for marriage.

The circuit court did not err in overruling Husband's motion to terminate his maintenance obligation by finding Wife's relationship with Partner did not constitute a substitute for marriage.

Point I is denied.

*Point II: Discovery*
*Party Positions*

Husband argues the circuit court abused its discretion in overruling his motion to compel discovery of the Colorado LLC bank records because this discovery was relevant under Rule 56.01(b) to the extent the circuit court properly focused on Partner's financial support of Wife in making its ruling.[4] Husband argues the circuit court abused its discretion in failing to compel discovery regarding Wife and Partner's financial support of one another while simultaneously finding Husband failed to produce sufficient evidence of financial support to carry his burden of proof to terminate maintenance. Wife argues the circuit court's ruling was proper because Husband sought discovery from two nonparties, which implicated privacy and confidentiality concerns.

*Standard of Review*

The circuit court retains broad discretion in conducting discovery. *State ex rel. Ford Motor Co. v. Messina*, 71 S.W.3d 602, 607 (Mo. banc 2002). This Court reviews the circuit court's ruling on a motion to compel discovery for an abuse of discretion. *City of Byrnes Mill v. Limesand*,

---

[4] All Rule references are to the Missouri Supreme Court Rules (2020), unless otherwise indicated.

599 S.W.3d 466, 475 (Mo. App. E.D. 2020). The circuit court abuses its discretion in administering the discovery rules when its ruling "is clearly against the logic of the circumstances, is arbitrary and unreasonable, and indicates a lack of careful consideration." *Ford Motor Co.*, 71 S.W.3d at 607. "When reviewing the [circuit] court's decision regarding issues arising from pre-trial discovery, of which appellate courts grant [circuit] court decisions great deference," this Court examines whether any abuse of this broad discretion "results in prejudice or unfair surprise." *Rasmussen v. Ill. Cas. Co.*, 628 S.W.3d 166, 172 (Mo. App. W.D. 2021) (quoting *Scheck Indus. Corp. v. Tarlton Corp.*, 435 S.W.3d 705, 717 (Mo. App. E.D. 2014)).

*Analysis*

Rule 56.01(b) provides, "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party[.]" Husband, as the party seeking discovery, bears the burden of establishing relevance. *Id*.

If this Court adopted Husband's reading of *Herzog* and found the circuit court improperly applied it by making findings regarding the parties' financial support of one another as he argued in Point I, it necessarily follows the circuit court did not abuse its discretion in denying discovery because Husband would not need these records to prevail, as he concedes. Instead, Husband alternatively argues to the extent the circuit court relied on the parties' financial support of one another, the Colorado LLC bank records were relevant to demonstrate Partner's financial support of Wife, which was additional proof their relationship constituted a substitute for marriage.

Husband cites *State ex rel. Helt v. O'Malley*, 53 S.W.3d 623 (Mo. App. W.D. 2001), to support his position. In *Helt*, a defendant filed fraud, negligence, and prima facie tort counterclaims, which included prayers for punitive damages, against a bank and two bank

14

employees. *Id*. at 624. The defendant sought discovery of the bank employees' tax and financial records to support his counterclaims, which the employees objected to as "confidential and private financial records." *Id*. The circuit court ordered the bank employees to file the financial records under seal until the defendant made a submissible case for punitive damages, at which time he could review the records. *Id*. The defendant sought a writ to compel disclosure prior to trial, which the Western District issued, finding while the bank employees' privacy interests were a valid concern, they asserted no claim of privilege and any privacy compromise could be addressed by a protective order. *Id*. at 625. This Court finds *Helt* distinguishable because the discovery sought there was from parties to the action. Here, neither Partner nor the Colorado LLC are a party this action. Husband cites this Court to no authority he is entitled to discover bank records from nonparties to the suit.

Even if the circuit court erred in failing to compel discovery, Husband cannot demonstrate prejudice. The record demonstrates the circuit court heard testimony regarding the Colorado LLC and the operation of its business. Wife testified she and Partner created the Colorado LLC after the dissolution and it owns two condominiums. Wife confirmed she and Partner both had access to the accounts and they shared expenses and deposits from the accounts. Wife testified she electronically transfers money to Partner or to the Colorado LLC bank account directly to pay for her share of the Colorado LLC's expenses and taxes due, which was reflected in Wife's personal bank records to which Husband had access. Husband also made an offer of proof regarding the Colorado LLC bank records. Further, this Court finds Husband could not prevail on his claim when applying *Herzog* to address *only* the permanence of Wife and Partner's relationship.

Point II is denied.

15

Husband argues the circuit court abused its discretion by ordering him to pay a portion of Wife's attorney's fees because he moved to terminate his maintenance obligation in good faith based on *Herzog* and section 452.370.3. Wife counters Husband does not cite or analyze the circuit court's statutory authority to award attorney's fees nor does Husband cite caselaw to support his position.

*Standard of Review*

The circuit court has broad discretion in awarding a party attorney's fees. *Goins v. Goins*, 406 S.W.3d 886, 891 (Mo. banc 2013). This Court will not overturn a circuit court's award of attorney's fees absent a showing the circuit court abused its broad discretion. *Id*. To demonstrate an abuse of discretion, Husband must show the circuit court's order was "clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Le v. Le*, 638 S.W.3d 583, 590 (Mo. App. E.D. 2021).

*Analysis*

"Parties to a domestic relations case are generally responsible for paying their own attorney's fees." *Goins*, 406 S.W.3d at 891; *Calabrese v. Dwyer*, 616 S.W.3d 517, 529 (Mo. App. E.D. 2021). Section 452.355.1, however, authorizes the circuit court to award attorney's fees to a party who defends against any proceeding brought under sections 425.300 to 452.415 "after considering all relevant factors including the financial resources of both parties, the merits of the case and the actions of the parties during the pendency of the action . . . ." *Id*. "One spouse's greater ability to pay is sufficient to support an award of attorney's fees to the other spouse." *C.K.*,

16

325 S.W.3d at 437 (quoting *Stufflebean v. Stufflebean*, 941 S.W.2d 844, 847 (Mo. App. W.D. 1997)).

The circuit court's judgment stated it considered all factors under section 452.355.1 when ordering Husband to pay a portion of Wife's attorney's fees. The circuit court heard evidence of the parties' financial resources, including Wife's current salary and household expenses she shared with Partner. The circuit court considered the merits of Husband's motion, found it was not brought in good faith, and stated it "was troubled by Husband's testimony that he believed Wife was actually married because of what he had heard from others." Husband's termination motion lacked merit because the plain language of section 452.370.3, the dissolution decree, and the separation agreement prohibited Husband from seeking modification of his nonmodifiable maintenance obligation. Further, Husband did not demonstrate Wife and Partner entered into a permanent relationship constituting a substitute for marriage under *Herzog* justifying the termination of his nonmodifiable maintenance obligation. The circuit court also heard evidence of Husband's misconduct during the pendency of the action. All of these factors, along with the circuit court's determination Husband's motion lacked merit, support the finding Husband's motion to terminate was not brought in good faith. Further, the circuit court did not award Wife all of the attorney's fees she requested because it considered her actions during the hearing in questioning Husband about irrelevant and embarrassing topics resulting in wasting judicial resources. Hence, this Court's review of the record indicates the circuit court properly applied section 452.355.1 in entering its award after careful consideration. The circuit court's judgment ordering Husband to pay a portion of Wife's attorney's fees does not shock this Court's sense of justice. *Le*, 638 S.W.3d at 590.

Point III is denied.

## Conclusion

The circuit court's judgment is affirmed.

_____
Philip M. Hess, Judge

Robert M. Clayton III, P.J. and
Cristian M. Stevens, J. concur.